### VOGT v. GUIDRY. (No. 6360.)

(Court of Civil Appeals of Texas. San Antonio. March 17, 1920. Rehearing Denied April 14, 1920.)

**1. Appeal and error ⊙⟱561—Superfluous words should not be inserted in statement of facts.**

Superfluous and unnecessary words should not be inserted into the statement of facts by the court's stenographer, and statements of witnesses should not be prefaced with the words "as to," in view of Rev. St. 1911, art. 2070.

**2. Breach of marriage promise ⊙⟱13—Immaterial that plaintiff refused to marry after breach by defendant.**

Where defendant breached his agreement to marry plaintiff, it was no defense to an action by plaintiff for damages that defendant after the breach made an offer of marriage to the plaintiff, and that she refused to marry him.

**3. Breach of marriage promise ⊙⟱13—Belief of dishonesty no ground for breach.**

It is no ground for justification for the breach of a contract to marry that at the time of the breach the defendeant in good faith believed that plaintiff was guilty of theft.

**4. Trial ⊙⟱352(1)—Special issue as to breach of marriage promise not on weight of evidence.**

In an action for breach of marriage promise, defendant having breached his agreement at a time when he thought plaintiff was guilty of theft, special issue that, if the jury found that defendant had breached the contract, and that plaintiff had not stolen the money, they should then state the amount of actual damages, was not on the weight of the evidence, because, if the jury found a breach and the worthiness of the woman, actual damages followed inevitably.

**5. Breach of marriage promise ⊙⟱26—Money expended in preparation for marriage not recoverable unless wasted.**

Recovery cannot be had in an action for damages for breach of marriage promise for money expended in preparation for marriage, where the evidence does not show that the things purchased were worthless and could not be used to advantage by the plaintiff.

**6. Appeal and error ⊙⟱1151(2)—Error cured by subtracting fixed sum from judgment.**

Where the court in a breach of marriage case erred in submitting as an element of damages money expended in purchasing articles in preparation for marriage, the error may be cured on appeal by subtracting the money expended from the amount of the judgment.

**7. Breach of marriage promise ⊙⟱35 — Evidence held to raise issue of impairment of health.**

In breach of marriage promise case, evidence of plaintiff that attitude of defendant hurt her feelings terribly, and also affected her nervous system, "made me awfully nervous; * * * just simply pulled me down; it took practically all the strength I had," etc., *held* sufficient to raise the issue of impairment of health.

**8. Appeal and error ⊙⟱1062(1)—Submission of issues answered favorably to appellant harmless.**

Submission of the issue as to whether defendant in a breach of marriage promise case falsely and maliciously accused plaintiff of theft could not have harmed the defendant, where answered in his favor.

**9. Breach of marriage promise ⊙⟱10—Accusation of theft and cruel treatment constituted breach.**

An accusation of theft and cruel treatment *held* to constitute breach of marriage promise.

**10. Breach of marriage promise ⊙⟱29—Belief in dishonesty of betrothed does not mitigate damages.**

Belief by defendant at the time he breached his marriage promise with plaintiff that plaintiff was guilty of theft will not mitigate the damages arising from the breach.

Appeal from District Court, Kendall County; R. H. Burney, Judge.

Action by Beulah Guidry against Arthur Vogt. Judgment for plaintiff, and defendant appeals. Affirmed.

Boyle, Ezell & Grover and J. B. Lewright, both of San Antonio, for appellant.

Wm. Wurzbach, Joe H. H. Graham, and W. C. Linden, all of San Antonio, for appellee.

FLY, C. J. This is a suit for damages, based on a breach of promise of marriage, instituted by appellee against appellant. Appellant admitted the existence of a contract to marry between him and appellee, but alleged that he had been voluntarily released from such contract by appellee on May 30, 1919, for a valuable consideration; that appellee was an employé of the firm of Vogt Hardware Company, of which appellant was a member, from August 2, 1918, to May 29, 1919; that it was her duty to sell goods, to keep the books, and assist appellant in counting the cash indicated by the cash register, to aid in making bank deposit slips, deposit money, and perform all the duties of a bookkeeper in a retail store in a town like Boerne. There was an allegation that shortages were found in the accounts, and a detective employed by the firm reported having detected appellee in taking $6 in the afternoon of May 29, 1919, and that when confronted by the detective appellee denied the charge of embezzlement, and grew angry and told appellant she was through with him, and afterwards confirmed this action and declared the engagement canceled. The jury, in response to special issues submitted by the court, found that appellant, on or about May 29, 1919, breached his contract to marry ap-

pellee; that appellee had not fraudulently appropriated any money belonging to appellant's firm; that appellant, when he breached his contract, believed that appellee had fraudulently appropriated money belonging to the Vogt Hardware Company; and that appellant did not falsely and maliciously accuse appellee of theft of the money. The jury assessed the actual damages at $5,000. Upon that verdict the judgment was rendered from which this appeal has been perfected.

[1] Appellant has in his brief given very few facts to sustain his assignment of errors, and appellee has failed to file any brief whatever. The task of investigating the facts fully has, therefore, fallen upon this court, and in this connection the court desires to call attention to and condemn a practice of some court stenographers of prefacing the statements of witnesses with the words "as to" and giving the substance of the subject about which they are testifying. For instance, the statement of appellee as to the length of time she had known appellant is written, "As to how long I had known Arthur Vogt, I had been knowing him ever since I had been in Boerne." It would have been just as clear, and much more concise, to have reported the witness as saying, "I had known Arthur Vogt ever since I had been in Boerne." Such superfluous words, can serve no end except to increase the costs and make it more burdensome on those who may be compelled to read the unnecessary verbiage to ascertain the facts testified about by the witnesses. These words are used in this case throughout a statement of facts of 250 pages or more, sometimes as many as 80 or 100 of the unnecessary words of prefaces being on a page. The burden placed upon litigants in perfecting appeals is heavy enough without being compelled to pay for hundreds of superfluous words in a statement of facts, that add nothing to its rhetoric, perspicuity, or vitality. The statement of facts should be prepared "in a succinct manner and without unnecessary repetition." Rev. Stats. art. 2070.

We find from the evidence that appellant had entered into a contract to marry with appellee, and without any just cause breached the same, and that the verdict for $5,000 in favor of appellee, as herein reduced, was justified by the evidence. Appellee did not release appellant from his contract to marry her. She did not steal or embezzle money belonging to the firm of Vogt Hardware Company.

[2] The first and second assignments are overruled. They assail the action of the court in refusing permission to appellant to prove by appellee that she was not willing to marry a man who had lost confidence in her and love for her, and who suspected her of dishonesty. The contract to marry was breached on May 29, 1919, and what the con-

dition of appellee's mind on the subject of marrying appellant was after that time is immaterial. However, the facts show that after appellant had charged her with being a thief she would have married him, and swore that she still loved him even at the time of the trial. On June 9, 1919, ten days after appellant had forsaken her, she tried to get him to come to see her. It was no defense to a breach of the contract to marry, if appellee had answered that she would not marry appellant, at the time of the trial. Her willingness or unwillingness at that time, or any other time after the breach, to marry appellant could not heal the breach made by appellant or exonerate him from blame. Even if there had been an offer of marriage by appellant and a refusal by appellee after institution of the suit, or after the cause of action accrued, it would have been no defense to the action. 4 Ruling Case Law, § 24, p. 166, and cases cited in footnotes.

[3] The jury found from ample testimony that appellee had not stolen money from the Vogt Hardware Company, and it would be no ground of justification for the breach of the contract that appellant may have believed she did steal. The detective testified to the theft, but the jury rejected his testimony. The jury doubtless believed that he was employed to discover something, and in order to make good he discovered it, as is so often the result in such cases. Probably appellant would have been in a better position if he had not so readily accepted the report of the detective. He had pledged his troth to her, and yet at the first breath of suspicion he forsook her and deemed her dishonest and unworthy of him. She had been in the store with him for months, and it is significant that in less than three months after the return of the brother, who was a partner and had been absent, and who was opposed to the marriage, the alleged crime was discovered, and a woman dependent on her labor for the support of herself and mother was charged with petty theft. Appellant cannot excuse his acts on the ground that he believed the charge of theft against his fiancée to be well founded. Appellant had been growing cold toward appellee for three weeks before he claimed to have discovered the theft. The third assignment is overruled.

[4] The fourth issue submitted by the court was not upon the weight of the evidence. It was in effect that, if the jury found in answer to question No. 1 that appellant had breached his contract to marry appellee, and that appellee had not stolen the money from the Vogt Hardware Company, then the jury would state the amount of actual damages. If the jury found a breach and the worthiness of the woman, actual damages followed inevitably, and it was not on the weight of any evidence to say so.

[5, 6] The fifth assignment is sustained. The evidence showed that appellee had expended $175 in preparation for her marriage, but does not show that the clothing and house linen bought by appellee was worthless, nor that it could not be used to advantage by appellee. The amount, however, is fixed, and the error can be cured by substracting the sum of $175 from the amount of the judgment.

[7] There was testimony tending to show that appellee's health had been injured to some extent at least. Appellee swore that the attitude of appellant hurt her feelings terribly and also affected her nervous system; "made me awfully nervous; * * * just simply pulled me down; it took practically all of the strength I had." She stated that her condition was not like it was before the occurrence on May 29, 1919, and "I just feel like I haven't any courage or ambition to do anything." The evidence was sufficient to raise the issue of impairment of health and the sixth assignment of error is overruled.

[8] The objections embodied in the seventh, eighth, and ninth assignments of error to the submission of the issue as to whether appellant falsely and maliciously accused appellee of theft are without merit. The jury found that appellant did not falsely and maliciously accuse her, and it is evident that, even if there was no testimony raising the issue, its submission could not have injured appellant, and it is not claimed that it did injure him. We are not disposed, however, to hold that the question was not raised by the evidence. Its submission could not and did not confuse or mislead the jury. The seventh issue submitted merely told the jury, if they answered the question as to falsity and malice in the affirmative, the jury should assess punitory or exemplary damages. They assessed no such damages, and appellant was not hurt.

[9, 10] There was no testimony to sustain an issue of release from the contract to marry by appellee, and the issue was properly denied by the court. If appellee had stated that she was through with appellant, as the detective and Rudolph Vogt swore she did, that would not amount to a release. The contract had been breached before that time by the accusation of theft made by appellant and by his cruel treatment of the woman betrothed to him. It would seem that a man under such circumstances would seek to shield and protect the woman of his choice, but he aided and abetted his brother in getting a detective to pursue her and aided in going over the books to see if there were other peculations. He had determined to breach and did breach the contract and labored to obtain testimony which he thought would justify the breach of his covenant. Appellant did not endeavor to shield the woman by a private investigation, but he called in a detective and the sheriff of the county to assist in fastening a crime upon her. He had to all intents and purposes breached the contract before he made it known to appellee. He admitted that he had reached the conclusion on May 29 that he would not marry appellee, and whatever was said by her was on May 30. He testified:

"I said that I made up your [my] mind that you [I] would not marry Miss Guidry on the evening of the 29th of May, when Mr. Jones first reported to me about the theft of the $6. I made up my mind definitely then that I would not marry her. The conversation in which she said she would not have any more to do with me was on the 30th, the next day. I had made up my mind not to marry her on the 29th, before she said anything about not having anything more to do with me. I based my conclusion not to marry her upon the incident that Mr. Jones has testified about."

Appellant through his testimony fully answers the contention contained in the tenth assignment of error that appellee breached the marriage contract. Fisher v. Barber, 62 Tex. Civ. App. 34, 130 S. W. 871. Through the twelfth, thirteenth, fourteenth, fifteenth, and sixteenth assignments of error the proposition is propounded that appellant was justified in breaching his contract to marry appellee if he believed her guilty of dishonesty, regardless of whether she was guilty or not. No authority is offered for the novel proposition. No court has gone farther, so far as we have been informed, than to hold that unchastity, not belief of the defendant as to unchastity, may be proved in defense of a breach of promise to marry, and that evidence of bad character in other respects may be shown in mitigation of damages. Appellant's belief cannot justify a breach or mitigate the damages arising thereform. 4 R. C. L. pp. 171, 172, §§ 30, 31; Colburn v. Marble, 196 Mass. 376, 82 N. E. 28, 124 Am. St. Rep. 561. If mere belief of bad conduct on the part of the woman could justify the man in breaching his promise to marry, he would have lodged in his own heart and conscience an effective defense to any breach of any promise to marry any woman, however pure and upright she might be, by swearing that he thought her bad. The law will not place such a weapon in the hands of any man to use against a defenseless woman. He must prove to the satisfaction of a jury any charge of unchastity or other bad conduct upon the part of the woman to obtain immunity or any relief from his breach of the marriage contract. Keezer on Marriage & Divorce, p. 3, § 5. The rule is laid down in Massachusetts by its court of last resort in the case of Smith v. Smith, 171 Mass. 404, 50 N. E. 933, 41 L. R. A. 800, 68 Am. St. Rep. 440, as follows:

"We think it is well settled that fraud of such a kind, in its essential elements, as would invalidate an ordinary contract, is a good defense to an action upon a contract to marry."

And as in the case of an ordinary contract it takes proof of the fraud itself, and not what one of the parties thought or believed to justify a breach.

The sum of $175 paid by appellee in preparation for her marriage will be deducted from the amount of the verdict, and the judgment affirmed for $4,825, with 6 per cent. interest from the date of the judgment of the lower court.

---

⊙⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes